# EVANS *vs.* BILLINGSLEY'S ADM'R.

[ASSUMPSIT FOR MONEY PAID.]

1. *When assumpsit for money paid lies in favor of sheriff's surety against defendant in execution.*—A sheriff's surety, having paid a judgment recovered against him for his principal's default in failing to return or make the money on an execution, may recover the money in assumpsit from the defendant in execution, on proof of an agreement between the latter and the plaintiff in execution, pursuant to which the suit against the sheriff and his surety was instituted, to the effect that, if the money could be made out of the latter, the plaintiff would no longer pursue the defendant in execution.

2. *Admissibility of parol evidence in aid of record.*—Where it is a material question, whether a recovery against a sheriff's sureties was founded on their principal's default in failing to pay over money collected on an execution, or in failing to return or make the money on the execution; and the record does not show on which ground the recovery was had,—parol evidence is admissible to show that, by the charge of the court to the jury, the liability of the sureties was made to turn only on the sheriff's default in failing to return or make the money on the execution.

APPEAL from the Circuit Court of Perry.
Tried before the Hon. ROBT. DOUGHERTY.

THIS action was brought by James G. Evans, the appellant, against the administrator of Thomas Billingsley, deceased, to recover certain moneys alleged to have been paid by the plaintiff for the intestate in his life-time, and at his special instance and request; and was commenced in April, 1852. All the facts are contained in the bill of exceptions which was taken by the plaintiff, and which is in these words:

"On the trial of this cause, it was proved that, on the 5th August, 1848, the Branch Bank of the State of Alabama at Mobile brought an action of debt, in the circuit court of Perry, on the official bond of David Chandler, as sheriff of said county, against the sureties on said bond, amongst whom was John G. Evans, the plaintiff in this case, to recover damages for the default of said Chandler, as such sheriff, in failing to make the money, and in failing to return an execution, which had been issued on a judgment in favor of said bank, hereinafter more particularly described; that said suit against Chandler's sureties was tried at the spring term of said court, 1849; and that the only material evidence introduced on the trial thereof was, in substance, as follows:

"'The said bank recovered a judgment, in the county court of Mobile, for $768 96 damages, with $22 18 costs, against William Huntington, Henry Y. Howze, and Thomas Billingsley. On the 18th October, 1842, an execution was duly issued on said judgment, and came to the hands of David Chandler, who was then sheriff of Perry county, to be executed, on the 28th October, 1842. Said execution, which was returnable to a term of the county court of Mobile to be held on the second Monday in February, 1843, was not levied; but the following endorsement appeared thereon, to-wit: 'Satisfied, February 13th, 1843. David Chandler, sheriff, by A. West, deputy sheriff.' This execution, as was proved, Chandler failed to return according to law. Said West, the deputy of Chandler, and a witness for the bank, testified, that said

execution was satisfied on the 13th February, 1843, and not on the 16th February, as shown by his receipts to the defendant in execution.' "

" The foregoing was the execution, touching which it was alleged in said suit that the aforesaid default of Chandler was committed. It further appeared in evidence on said trial, that Thomas Billingsley, one of the defendants in said execution, at the time of its issue, and thence continually afterwards, resided in Perry county, and, during the whole of that time, owned and possessed a considerable real and pesonal estate in said county, worth largely more than the amount of said execution, out of which the money might have been made; that another *fi. fa.* was issued on said judgment on the 17th March, 1843, and another on the 20th July, 1846, both of which were returned by the sheriff, by order of the agents and attorneys of the bank, without any action thereon; that another *fi. fa.* was issued on said judgment on the 27th February, 1847, and came to the hands of W. W. Stokes, as sheriff of said county, to be executed; that this last *fi. fa.* was levied, on the 22d May, 1847, on divers slaves belonging to said Billingsley, who thereupon replevied them, by executing a delivery bond, with one W. Cocke as surety, which bond was returned forfeited on the 7th June, 1847; that an execution was afterwards issued against the defendants in said judgment and Cocke, the surety on the delivery bond, which execution was not delivered to the sheriff, but was held up by H. Davis, the agent and attorney of the bank in and for Perry county, and was afterwards returned by said Davis with an endorsement in these words: ' *Not delivered, to await rule against Chandler ;* ' that another *fi. fa.* was afterwards issued against the defendants in said judgment, with said Cocke, which was returned without any action thereon; that said Cocke was solvent at the time of said forfeited bond, and ever since has been, and possessed of real and personal estate worth greatly more than enough to satisfy said execution, and it was always in the power of the plaintiff to make the money out of the property of the defendants in execution; and that James G. Evans, L. A.

Weissinger, Samuel Childs and Henry C. Lea were the sureties of said Chandler, on his official bond as sheriff of said county, at the time of the default complained of, and were the only defendants in said action.

"The foregoing, it appeared, was all the evidence introduced on the trial of said suit against Chandler's sureties; and it was proved that, on this evidence, a verdict and judgment were rendered in favor of the bank, against the said sureties of Chandler, of whom plaintiff was one, for $1194 41 debt, and $119 44 damages, with costs, at the spring term of said court, 1849. It further appeared in evidence, that all of the defendants in said judgment, except the said Evans, were insolvent; that said Evans, on the 20th April, 1851, in the life-time of said Billingsley, paid and satisfied said judgment. It appeared in evidence, also, that when the sheriff was about to make the money out of said Billingsley on the *alias* and *pluries* executions on the bank judgment, an arrangement was entered into by and between Billingsley and the bank, at the instance of Billingsley, to the effect that a suit should be instituted against Chandler's sureties, to recover the amount of said judgment out of them, and that in the meantime the execution against Billingsley and others should be held up, and no steps should be taken to enforce the payment thereof out of the defendants, unless the bank failed to make the money out of Chandler and his sureties, and the proceedings against said defendants in execution were to await the result of the suit against Chandler's sureties; that after said agreement was entered into, and in pursuance thereof, the suit against Chandler and his sureties was instituted, and prosecuted to judgment as aforesaid; that Billingsley took an active part in the prosecution of said suit, and employed an attorney-at-law to appear and represent him in the prosecution thereof; that said attorney, in pursuance of said employment, did appear in said suit, and prosecuted it to judgment against Chandler's sureties as aforesaid; that Billingsley frequently declared, during the progress of said suit, that he had paid the money on the bank execution first mentioned to the deputy of said

Chandler, and did not intend to pay it again, and that he wanted it made out of the defendants in said suit, to-wit, the sureties of said Chandler, and not out of himself. The bank's agent, who made the said arrangement with Billingsley, testified, that all the bank wanted was its money; and that after it had got the money from said Evans, by means of said judgment against him and the other sureties of Chandler, the bank made no further effort, so far as he knew, to collect it out of Billingsley and the other defendants in the original execution.

"The plaintiff offered to prove, that on the trial of said cause against Chandler's sureties, the charge of the court to the jury who tried the cause was as follows: 'That if the sheriff, David Chandler, by mere neglect had failed to make the money on said execution, when the same might have been made out of the property of the defendants by the exercise of due diligence, or failed to return the same according to law, the measure of damages would be the amount of the execution, with interest thereon, and the plaintiff would be entitled to recover the same from the defendants in this form of action.' This evidence was rejected by the court, on the defendant's objection, and the plaintiff excepted. It appeared in evidence, also, that the money paid by said Billingsley to A. West, the deputy of said Chandler, was not paid until after the return day of said bank execution, and when the sheriff had no authority as such to receive it; and that said Billingsley was the intestate of the defendant.

"This being all the material evidence in the cause, the court charged the jury, that they must find a verdict for the defendant; to which charge of the court the plaintiff excepted."

In consequence of these rulings of the court, the plaintiff took a non-suit, which he now moves to set aside; assigning as error the exclusion of the evidence offered by him, and the charge of the court to the jury.

Wm. M. Brooks, for the appellant.

I. W. Garrott, *contra*.

STONE, J.—Our decisions clearly settle the following principles:

1. If a sheriff, having an execution in his hands for collection, himself pay the plaintiff his demand, this payment gives the sheriff no right of action against the defendant, unless the defendant had previously requested him to make such payment, or, after it was made, adopted the act, by insisting on it as a satisfaction of the execution.

2. That a previous request by the defendant, or subsequent adoption, as above supposed, clothes the sheriff with the right to sue the defendant, and recover the money, as so much money paid at the request of the defendant. These principles have been too long recognized and enforced, to be now open to controversy.—See Mooney & Black v. Parker, 18 Ala. 708, in which the previous decisions are collated; Poe v. Dorrah, 20 Ala. 288.

In the case of Saint v. Ledyard & Co., 14 Ala. 244, the sheriff had returned the execution satisfied; and his sureties were forced to pay the money to the plaintiffs. A part of the money had not in fact been collected by the sheriff; and the sureties, in the name of the plaintiffs, moved the court to vacate and set aside the return of satisfaction. Notice was given to the defendant, Saint; and, on the hearing, the court granted the motion, and vacated the return. In considering whether the sureties had the right to recover the money so paid by them, this court said, "they [the sureties] were subrogated to all the rights of the former, [the plaintiff,] both against the sheriff and Saint."

We think the principle above asserted, as well as the reason on which it rests, will authorize the sheriff's sureties, who pay off an execution, to recover of the defendant, in every case in which the sheriff himself, having paid the money, could recover. The question arises, then, could the sheriff Chandler, if he had paid the money to the plaintiff under the circumstances disclosed in this record, have recovered it out of the defendant Billingsley? We will hereafter consider the question, what was the *particular default* of the sheriff, for which the bank recov-

ered the money of his sureties. For the present, we will assume it was either for not making the money, or for not returning the execution.

The agreement between Billingsley, the defendant in execution, and the agent of the bank, was, that the bank should hold up its execution against Billingsley, until an effort should be made to collect the money out of the sheriff and his sureties; and it was certainly one of the terms of this agreement, as the testimony discloses, that if the bank recovered its demand from the sheriff and his sureties, then it would not further pursue Billingsley. As strong confirmatory evidence that this was the agreement, if such confirmation be necessary, we find that the bank, after obtaining its money, has rested satisfied, and has made no further effort to coerce payment from Mr. Billingsley. The testimony tends to show, that this agreement was entered into at the instance, and for the accommodation of Billingsley; and that he employed counsel to prosecute the suit, and fasten the liability on the sheriff and his sureties. From the testimony recited in the bill of exceptions, we think the jury might have found the above to be the facts.

In Cross v. Cheshire, 7 Exch. 43, the court held, that "if a person who owes a debt to A., by any contrivance causes B. to pay it, the action for money paid will lie to recover back the amount, and the machinery by which the mischief was brought about is utterly immaterial." See, also, Addison on Contracts, (ed. of 1857,) p. 57.

If the above facts be found by the jury, we do not hesitate to say, that they make out a case of payment at the instance, and with the approbation of the defendant, Billingsley. In fact, the effect of his agreement with the bank agent was an adoption by him in advance of the payment to be made by the sheriff and his sureties. These facts, if they exist, bring this case clearly within the principle asserted as No. 2, at the opening of this opinion; and, consequently, the charge of the court, which instructed the jury to find for the defendant, was erroneous.

2. The transcript in this case does not contain the record of the suit which resulted in a recovery against

Chandler and his sureties. The bill of exceptions informs us, that it was a suit on his official bond, " to recover damages for the default of said Chandler, as such sheriff, in failing to make the money, and in failing to return a certain execution," &c. This execution was in favor of the Branch Bank at Mobile, and against Billingsley. The record does not inform us, whether the declaration on the sheriff's bond contained a breach for not paying over money collected, or any other breach, save the two above noted. If the declaration did contain such third breach, *for not paying over money collected,* then the real ground of recovery will become a material inquiry. If the recovery from Evans was for not paying over money collected, of course no action will lie at his instance to recover it back from Billingsley. If, however, the recovery was either for not making the money, or for not returning the execution, then the case is within the rules above laid down.

The pleadings, in suits at law, are frequently so general, or stated in so many varying forms to meet the emergencies of the proof, that the record entirely fails to identify the precise subject of contestation. In such cases, parol evidence is always admissible in aid of the record, to show the precise matters that were in proof, and that were submitted to the jury for their decision. The limit to the rule is, that such proof must be within the scope of the issues found in the suit, about which the proof is offered. The question is one of identification; and hence, all testimony, which tends to show what the jury did in fact pass on, should be received in evidence. The proof before the former jury, and the charge of the court, are evidently material and pertinent on such an inquiry.—Smith v. Kelly, 2 Hall's N. Y. Rep. 217; Marsh v. Pier, 4 Rawle, 273; Ferrell v. Underwood, 2 Dev. 111; Gardner v. Buckler, 3 Cow. 120; Wood v. Jackson, 8 Wend. 9; Phil. Ev. (by Van Cott,) part 2, pp. 14, 15; *ib.* 164; Chamberlain v. Gaillard, 26 Ala. 504.

When the issue or issues are broad enough to admit of proof concerning two or more separate demands or causes of action, it is also permissible to show that no proof was

offered as to one or more of such demands.—McLaughlin .v. Hill, 6 Ver. 50; Bridge v. Gray, 14 Pick. 55; Young v. Fuller, 29 Ala. 464; Rakes v. Pope, 7 Ala. 161; Lawrence v. Hunt, 10 Wend. 80; Seddon v. Tutop, 6 T. R. 607; Snider v. Croy, 2 Johns. 227; Phillips v. Berick, 16 Johns. 136.

In this case, we are unanimous in the opinion, that if the declaration, in the suit against Chandler and his sureties, contained an averment that he (Chandler) had collected the money on the execution against Billingsley, and failed to pay it over on demand, it was competent for the plaintiff in this action to show that no proof was made on the former trial bearing on this averment, and that in fact no contest was had on that issue before the jury trying that case. The result of such proof, if believed, would be to show that the verdict of the jury against the sheriff and his sureties was based either on a failure to make the money, or a failure to return the execution. 1 Greenl. Ev. §§ 528, 529.

If, however, the declaration contained the three breaches, for not paying over money collected, for not making the money, and for not returning the execution; and if proof was offered and contest had upon each of these three issues, we think this will present a graver question than the one last above considered. This question has not been argued, and we forbear now to intimate an opinion upon it.—Chamberlain v. Gaillard, *supra.*

It is contended for appellee, that there was no proof that the bank had ever received its money. The bill of exceptions tends to show the contrary. At all events, there was enough proof on this point to justify its submission to the jury.

For the error in excluding the evidence, and in the charge of the court, the judgment of the circuit court is reversed, the non-suit set aside, and the cause remanded.