P. N. HEILIG and others, Administrators *v.* H. A. LEMLY and ED-
    WARD SHAVER, Adm'rs, &c.

Where a sheriff, who by negligent delay in collecting an execution, had
    rendered himself liable to the plaintiff, paid off the debt in his own
    exoneration, and took an assignment from the plaintiff to a third per-
    son in trust for himself; *Held,* that the judgment was not thereby ex-
    tinguished, and nothing else appearing, the assignee was entitled to
    an *alias* execution thereupon.

(*Bowen* v. *Jones,* 13 Ired. 25; *McLeod* v. *McCall,* 3 Jones 87; *Stewart* v.
    *Rutherford,* 4 Jones 483.)

This was a MOTION in the cause, heard before his Honor,
*Cloud, J.,* at Fall Term, 1875, of the Superior Court of
ROWAN county.

It was admitted that the plaintiffs obtained judgment
against the defendants' intestate and others at Fall Term,
1869, of Rowan Superior Court, for the sum of one thousand
dollars, and interest thereon from the 20th day of September,
1869, and also for costs. That an execution issued to the
sheriff of said county, returnable to Spring Term, 1871; that
after the said execution was spent, and while the same was in
the hands of W. A. Walton, the then sheriff of Rowan county,
who was sheriff at the time the execution issued, said Walton
paid to the plaintiffs the amount of said execution, before the
same had been returned to court, and the plaintiffs endorsed
the execution, as follows:

"I assign the within execution to L. W. Walton, without
recourse, August 28th, 1871," the same being signed by all of
the plaintiffs.

It was further admitted that L. W. Walton was the son of
W. A. Walton, the then sheriff of Rowan county; that the
said sheriff paid the value of the execution with his own funds
and had the same assigned as aforesaid.

The plaintiffs moved the court for leave to issue execution

against the defendants for the collection of the judgment for the benefit of L. W. Walton.

The defendants counsel resisted the motion upon the grounds:

1. That there had been no legal assignment of the judgment to L. W. Walton.

2. If there was an assignment, it was made with the money of the sheriff of Rowan county, and that an assignment made under such circumstances was contrary to public policy, and therefore void.

Upon the hearing, the motion was allowed by the court, and the defendants appealed.

*McCorkle & Bailey,* for the appellants.

*Battle, Battle & Mordecai,* and *J S. Henderson,* contra.

RODMAN. J. The question is whether a Sheriff who has made himself liable to a plaintiff by his negligent delay in collecting an execution, and who pays off the debt in his own exoneration and takes an assignment from the plaintiff to a third person in trust for himself, has thereby extinguished the judgment, so that he cannot have an *alias* execution issued to another officer upon it?

The cases cited by the learned counsel for the defendants from New York do certainly establish that, in that State, upon grounds of public policy, the judgment is absolutely extinguished. *Reed* v. *Pruyn,* 7 Johns., 426; *Sherman* v. *Boyce,* 15 Johns., 443; *Bigelow* v. *Provost,* 5 Hill, 566, and others which may be found cited in a note to Herman on Executions, 205. Nor is this doctrine confined to New York. It is so held in Alabama: *Rountree* v. *Weaver,* 8 Ala., 314; *Boren* v. *McGehee,* 6 Porter, 432; *Crutchfield* v. *Haynes,* 14 Ala., 49; in Tennessee, *Smith* v. *Herman,* 1 Cold., 141; but see *Lintry* v. *Thompson,* 1 Head, 456; in Missouri, *Garth* v. *Campbell,* 10 Mo., 154; in Maine and Massachusetts, unless the Sheriff takes an assignment from the plaintiff, the judg-

ment is extinguished, but if he does, it is not. *Whittier* v. *Heimingway*, 22 Me., 238; *Allen* v. *Holden*, 2 Mass., 133; *Dunn* v. *Snell*, 15 Mass., 481. So in Georgia, *Arnett* v. *Cloud*, 2 Ga., 53; and perhaps in some other States.

The foundation of all these cases seems to be that of *Reed* v. *Pruyn*. In that case the Sheriff having a *ca. sa.* against Staats, under which Staats was arrested, procured him and Pruyn to confess a judgment in favor of the plaintiff for a larger sum, and the Sheriff paid the amount of the execution to the plaintiff. In a few days he took out a *ca. sa.* on the judgment confessed by Staats and Pruyn, and took their note for a still larger sum, and gave them a receipt for the amount of the first judgment. Afterwards the Sheriff advertised the property of Pruyn and Staats for sale under an execution upon the judgment confessed, and they moved to set aside the execution, and for an entry of satisfaction on the judgment confessed. The court granted the motion, and there can be no doubt was right in doing so.

A sheriff who has an execution against a defendant and as the price of indulgence takes from him a judgment confessed, or a note, for a larger sum, is guilty of oppression and of a breach of official duty, and on grounds of public policy such judgment confessed, or note, must be held void, notwithstanding the sheriff has paid the plaintiff in the original judgment the amount of his claim. And *a fortiori* any acts of the sheriff after he had acquired his interest, under an execution whether issued upon the original judgment confessed, were in like manner void as to the defendant in the execution. This last proposition has long been settled. Bat. Rev. chap. 25, Coroner; chap. 106, Sheriff; *Brown* v *Jones*, 3 Ired. 25; *Mc-Leod* v *McHall*, 3 Jones 87; *Stewart* v *Rutherford*, 4 Jones 483. And the first we conceive to be equally clear upon general principles. See also Bat. Rev. chap. 106, sec. 17.

KENT, J., in delivering the opinion of the court (after citing the cases of *Wallace* v *Weedale*, Noy. 107: *Langdon* v *Wallis*,

Lutw. 587; *Speake* v *Richards*, Hob. 206, and *Ward* ·v *Hanchel*, 1 Keb. 551,) says, "The practice of sheriffs of pay-· ing executions themselves, and taking security and judgment bonds from the party over whom they have at the time such means of coercion is to be strictly and vigilantly watched by the courts. Such humanity is imposing, but it may be turned into cruelty. Nothing is more important to the honor of the administration of justice, than that the officers of the court should not use its process as the means of making unequal bargains, and taking undue advantage. The facts in this case have the appearance of an instance of gross abuse."

He .concludes by saying, "I am happy therefore that the sheriff will be driven to seek his remedy upon the note, when the legality of the increase of the original debt will be open. to further investigation."

. We think that in the subsequent cases in New York, and in the others elsewhere that have followed this case, the opinion. of the eminent Judge has been misconceived, and an extension given to it which was not intended, and which cannot be supported by reason. An opinion applicable to a special case, has been converted into a general and arbitrary rule.

In the present case, the sheriff having an execution against the defendant paid it to the plaintiff in his own exoneration and took an assignment on the execution to his son, whether as a trustee for himself, or as a gift to the son, is not material. He now moves that an *alias* execution may issue to his successor in office, for his benefit. There has been no oppression as there clearly was in the case of *Reed* v. *Pruyn*, and the debt has not been increased.

We are at a loss to conceive what public policy will be violated if the motion is allowed.

It is said that if a sheriff can escape amercement by paying an execution which it was his duty to collect, he will be induced to delay enforcing executions, and creditors may be injured. The creditor cannot be injured if the debt is paid.

And it cannot be a wrong to the debtor if a sheriff who, rely-ing perhaps on his promise to pay the money by the return day, has made himself liable by his indulgence, is allowed af-ter payment to stand in the position of the creditor. If pub-lic policy forbids such payments by sheriffs, and for that rea-son the judgment is extinguished, it would seem that the same principle would forbid any recovery by the sheriff of the money so paid by him. But the principal case we have com-mented on, holds that the sheriff might sue upon the note which he had taken, and recover what might be just.

It is also said in *Roundtree* v. *Weaver*, that the sheriff in an action against the defendant can recover the money paid for his benefit. And in *Lintz* v. *Thompson* it is said that if the sheriff is compelled to pay the debt by a judgment of a court, there is an implied transfer of the plaintiff's debt to him. These cases thus acknowledge that it would be inequi-table for a defendant to receive the benefit of the sheriff's payment, and refuse to re-imburse him. It is true that the defendant did not previously request the sheriff to pay the debt, and that in general no one can make himself the cred-itor of another by officious service, or by officiously paying a debt for him. But where a sheriff, at the express or presumed request of a defendant in execution, indulges him so that the sheriff is compelled to pay the debt, there is a clear equity for re-imbursement. The acceptance of the discharge of the original debt by the defendant in execution, may be consid-ered as a ratification of the sheriff's act, and as equivalent to a prior request. It is somewhat like a case where one accepts a draft about to be protested for non-acceptance, for the honor of the drawer. If this equity for re-imbursement be admitted as a foundation for an action, why is it illegal and against public policy for the sheriff to take an assignment of the exe-cution, which gives him no more than he would have a right to recover? The form of the recovery is not an essential part

of the equity, and there is no reason why the sheriff should be put to the circuity of an action.

It has been seen that in Maine and Massachusetts it is held that where the sheriff takes an assignment of the judgment from the plaintiff in execution, the judgment is not extinguished. The decisions in those States support our decision in the present case. We think also that they imply that it is not against public policy for a sheriff to pay off a debt in his own exoneration; for if it were, an assignment would not be sustained.

We concur with the Judge below, that the motion should be allowed.

Judgment affirmed. Let this opinion be certified.

PER CURIAM. Judgment affirmed.